IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LARRY DONNELL SMITH, | § | |
| Defendant-Petitioner, | § | |
| | § | |
| v. | § | No.  7:12-CV-176-O-BL |
| | § | (7:08-CR-023-O) |
| UNITED STATES OF AMERICA, | § | |
| Plaintiff-Respondent. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION

Under the authority of 28 U.S.C. § 636(b) and Rules 8(b) of the Rules Governing Section 2255 Cases in the United States District Courts, this case was referred to the undersigned United States Magistrate Judge by Order of Reference (ECF 16) for hearing, if necessary, and proposed findings of fact, conclusions of law, and recommendation for disposition.

Statement of Case

A jury found Smith guilty of possession with intent to distribute cocaine, unlawful possession of a firearm by a felon, and possession of a firearm in furtherance of a drug-trafficking crime. (ECF 54).  The Court sentenced Smith to a total of 200 months' imprisonment. (ECF 70). Smith appealed, but the Fifth Circuit Court of Appeals affirmed his conviction and sentence in an unpublished opinion. *See United States v. Smith*, 424 F. App'x 292 (5th Cir. 2011). Smith filed a petition for writ of certiorari in the Supreme Court. It was denied on October 11, 2011. *Smith v. United States*, 132 S. Ct. 409 (2011). Smith timely filed this first motion under 28 U.S.C. Section 2255.

Standard for 2255 Review

As articulately summarized in the U.S. Attorney's Response and Brief (ECF 7), under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence. It provides four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the

1

sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack." *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (internal marks omitted). "It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). And it "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id*. at 164. Instead, section 2255 is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *Capua*, 656 F.2d at 1037. In other words, the "scope of relief under § 2255 is consistent with that of the writ of habeas corpus." *Placente*, 81 F.3d at 558.

<u>Smith's Claim(s)</u>

By his motion Smith makes twenty-five complaints of ineffectiveness of his trial and appellate counsel at the four stages of his trial. Smith first complains that his trial attorney was ineffective at the pretrial stage because the attorney:

1. failed "to properly argue for suppression of the evidence by failing to challenge the Miranda violation"

2. failed "to interview and call eye witnesses to the search who would have testified that no search warrant was ever provided and that Petitioner's statements were the result of threats"

3. failed "to argue that no consent was given for officers to enter house and that entry was without warning"

4. failed "to challenge and present evidence that the search on the basis that the search warrant was not issued until after the search had been conducted and Petitioner had been interrogated without Miranda warnings"

5. failed "to locate, identify, and call as a witness the alleged CI"

     6. failed "to effectively argue that the affidavit in support of search warrant was based on reckless disregard for the truth"

     7. failed "to allow Petitioner to testify – despite Petitioner's request to counsel for each of these"

     8. failed "to move to dismiss based on the violation of Petitioner's right to a speedy trial;" and'

     9. failed "to effectively argue that Petitioner was entitled to present his theory of defense"

Second, Smith complains that he received "ineffective assistance of counsel during trial" because his attorney:

     10. failed "to effectively cross-examine the government's witnesses"

     11. failed "to properly argue that Petitioner was entitled to present his theory of defense"

     12. failed "to call witnesses who would have testified as to the true ownership of the drugs and guns found during the search"

     13. failed "to present any meaningful defense on Petitioner's behalf"

     14. failed "to present evidence that the drugs and guns belonged to a third party;" and,

     15. failed "to effectively argue for acquittal."

Third, Smith complains that ineffective assistance of counsel resulted in his "[u]nknowing and involuntary decision to proceed to trial" because his attorney:

     16. failed "to inform him of the true risks associated between proceeding to trial versus accepting the proposed plea agreement, including the acceptance of responsibility reduction"

     17. failed "to correctly inform Petitioner of the true elements of the offense"

     18. gave "grossly erroneous assurances that Petitioner would be acquitted or that appeals court would reverse;" and,

     19. failed "to negotiate for a plea agreement that included a specific sentence and/or the dismissal of Count Three."

Finally, Smith complains that he received ineffective assistance of his trial and appellate counsel "during sentencing and on appeal" because his attorney:

20. failed "to argue that Petitioner's sentence for Counts Two and Three violated his double jeopardy rights"

21. failed "to properly challenge the evidence obtained from the search"

22. failed "to argue that the evidence was insufficient to sustain a guilty verdict for Count Three"

23. failed "to argue that the district court's refusal to require identification of the alleged CI violated Petitioner's right to present his theory of defense"

24. failed "to properly challenge the district court's refusal to grant a Franks hearing;"and,

25. failed "to challenge the violation of Petitioner's right to a speedy trial."

<u>United States Response(s)</u>

In its response(s) to Smith's multitudinous claims,[1] the United States responded that his first claim was barred by the Court of Appeal's decision that Smith's *Miranda* violation claim lacked merit because the other evidence of Smith's guilt (apart from his un-*Mirandized* statements) was sufficient for the jury to find Smith guilty beyond a reasonable doubt.[2] The government further posited that most of the other claims were so wanting in specifics as to be conclusory only, not warranting consideration by this Court.

<u>Standard for Review of Ineffective Assistance of Counsel (IAC) Claims</u>

Claims that counsel was ineffective can be raised under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Ineffective-assistance claims are governed by the now-familiar, two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the prisoner must prove that his counsel's performance was deficient by identifying specific acts or omissions that were not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690. Second, the prisoner must prove that his counsel's deficient performance resulted in prejudice by showing

---

[1]     To Smith's twenty-five claims the United States has responded by Response [ECF 7], Sur-Reply [ECF 13] and Smith has countered with his Reply Brief [ECF 10] and his Response to Sur-reply [ECF 14].

[2]     Opinion, p. 8 (ECF 86 in 7:08-cr-23, p 110).

that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal marks omitted). Put another way, the prisoner must prove that but for counsel's errors, "there is a reasonable probability that" the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "That requires a substantial, not just conceivable, likelihood of a different result." *Pinholster*, 131 S. Ct. at 1403. Simply making "conclusory allegations" of deficient performance and prejudice is insufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). "Recognizing the temptation for a defendant to second-guess counsel's assistance after conviction or adverse sentence," the Supreme Court has emphasized "that counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in exercise of reasonable professional judgment." *Pinholster*, 131 S. Ct. at 1403 (internal marks omitted). The Court cautioned that ineffective-assistance claims "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial . . . ." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal marks omitted). Thus, the Court admonished that "the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." *Id*. The Court reminded that in applying *Strickland*, "the standard for judging counsel's representation is a most deferential one," and a court must be mindful that "the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Id.* Importantly, the Court reaffirmed that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . [but] simply to ensure that criminal defendants receive a fair trial." *Pinholster*, 131 S. Ct. at 1403 (brackets in original, internal marks omitted). And it is the defendant's burden to prove his counsel was deficient; it is not the government's burden to prove his counsel was competent. *Premo v. Moore*, 131 S. Ct. 733, 739 (2011) (internal marks omitted).  "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).

To establish that counsel was ineffective, the defendant must prove: (1) "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" *Strickland*, 466 U.S. at 687 and (2) "that the deficient performance prejudiced the defense." *Id*. To prove that trial counsel's deficient performance prejudiced the defense, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of a criminal trial]." *Id*. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, *supra* at 787; *Pinholster*, *supra* at 1403. The claim fails if the prisoner does not satisfy either the deficient-performance prong or the prejudice prong. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).  And a court need not address both components if there is an insufficient showing on one. *Id*.

<u>Claim No. 1</u>

During a preliminary search of Smith's residence, one of the law enforcement officers (Officer Dilbeck) observed drug paraphernalia, a baggie of suspected drugs and a handgun. While other  police officers were searching the residence, Smith made a statement to Dilbeck to the effect that "everything in the house was his" (meaning Smith's).  Dilbeck responded and said, in effect, "So you're telling me everything I find in this house belongs to you?" To this Smith replied "Yes, the girls didn't have anything to do with it."[3]  During the follow-up search of the residence other officers found two loaded handguns, drug "cut," a set of digital scales, and baggies and a cereal box containing cocaine base (crack). Smith's statements were admitted into evidence at the trial over the objection of Smith's counsel.  On his direct appeal, Smith argued that the district court erred in admitting Smith's statements to Dilbeck "because they were made before he had been given the

---

[3]      Trial Transcript p. 110, lines 5-10 ( ECF 80 in 7:08-cr-23, p 110).

*Miranda* warnings." This claim lacks merit because of the decision of the Fifth Circuit that held that Smith had not shown that any error affected the outcome of the district court proceedings, citing the other evidence of Smith's guilt, which was deemed sufficient for the jury to find Smith guilty beyond a reasonable doubt.[4]   The Court of Appeals' holding is the law of the case and should not be revisited in this collateral proceeding. *See United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013). Because the Fifth Circuit concluded that any *Miranda* violation did not affect the outcome of the proceedings in the district court, Smith has not and cannot show a substantial likelihood of a different result. *See Cullen v. Pinholster*, supra at 1403 ("actual prejudice requires a substantial, not just conceivable, likelihood of a different result.") I conclude that no reasonable jurist would find otherwise.

<u>Claims Nos. 2, 3, 4 and 21</u>

Smith's second group of claims nos. 2, 3, 4 and 21 challenge the legality of the search of Smith's residence.  This claim proceeds from the assertion that the search was an unconsented, warrantless search of his residence that *preceded* the issuance of a search warrant. Therefore he argues that the evidence obtained as a result of the search would have been suppressed had Smith's counsel rendered adequate representation.  And if suppressed, as the evidence should have been, there would have been no evidence to support his conviction on any of the counts.  Hence, the taint of his *Miranda*-less statements could not be overcome by other evidence rendering the conviction unsupported by any evidence as found by the Court of Appeals on his direct appeal.

Ordinarily, Fourth Amendment claims challenging searches are not cognizable under 18 U.S.C. § 2255.  *Stone v. Powell*, 428 U.S. 465 (1976).  However, Smith brings this claim through

---

[4]         Opinion, p. 8 (ECF 86 in 7:08-cr-23, p 110).

the *Kimmelman*[5] back door by alleging that this claim is cognizable in this court notwithstanding *Stone* because it is grounded upon his Sixth Amendment claim that his counsel rendered ineffective assistance. In support of his conclusory allegations of this claim, Smith tendered two affidavits.[6] In his first affidavit he avers a factual scenario that establishes a time line pointing to a non-consented entry into his house at or shortly before 2:30 p.m. on the afternoon of October 8, 2008. The time line further time-dated Officer Dilbeck's own entry into the house and his conversation with Smith leading to his non-*Mirandized* statements as having occurred prior to ***2:50 p.m.*** Included in the second affidavit is an arrest report time-dating the arrest at 14:30 (2:30 p.m.) together with a copy of the search warrant reflecting the magistrate's signature on the warrant at **2:50 p.m.** In his second affidavit Smith alleged that the three women at the residence at the time of the search would confirm a "no-knock" entry, a lack of consent to search, and lack of *Miranda* warnings before Smith's incriminating statements were made to Officer Dilbeck. Smith further set out allegations that he informed his counsel of these matters, requesting a suppression hearing, but counsel refused based upon a conversation he had with Officer Dilbeck indicating that the **2:50 p.m.** time-date on the warrant was a typographical error (typo).

The government responded that the court should not consider the unauthenticated, newly-proffered materials submitted with Smith's late-tendered affidavit which are directly contradicted by Officer Dilbeck's sworn testimony at trial that affirmatively established the time of the commencement of the search well after the issuance of the search warrant. As to whether the warrant

---

[5]  *Kimmelmann v. Morrison*, 477 U.S. 365 (1986); See also *Gary v. Epps*, 248 F. App'x 497 (5th Cir. 2007)("Although Stone v. Powell, 428 U.S. 465, 486, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), precludes Gary from obtaining federal habeas relief on an independent Fourth Amendment claim, Stone does not bar Gary's ineffective assistance of counsel claim premised on counsel's failure to litigate a Fourth Amendment claim.)"

[6]  One with his Reply Brief responding to the government's Response to his 2255 motion and a Second Affidavit with his Response to the government's Sur-Reply.

had already been issued at the time of the search, Shemeia Wyatt, one of the three women detained at the time of the commencement of the search,  testified that she found the search warrant on top of the entertainment center in the house on the day of the search. CR 76, pp. 224-25.

Impliedly relying on the adage "Paper doesn't lie, people do" Smith countered that he had alleged enough to warrant a hearing. Finding that Smith alleged sufficient non-conclusory facts to support his IAC claim with respect to the search timing issue, I ordered and conducted an evidentiary hearing limited to the sole issue of whether his trial counsel was ineffective for failing to file a motion to suppress or other challenge to the efficacy of the search warrant on the time-of-issuance ground.

After considering the testimony and evidence adduced at the hearing and considering the arguments of counsel, I make the following findings:

1. That the search warrant was issued at 2:50 p.m. Central Standard Time on  the day of the search.
2. That the notations of the time of the commencement of the search contained in Petitioner's exhibits[7] were erroneously made by Officer Dilbeck through his own admitted mistake as to the time of the commencement of the search.
3. That the dispatcher's notes contained in the government's exhibits[8] clearly and unequivocally establish that the search did not commenced at 2:30 p.m. but instead did commence no earlier than twenty-one (21) minutes after the time of the issuance of the search warrant.
4. That the search was commenced after the time of issuance of the search warrant and its placement in the hands of Officer Dilbeck.
5. That the search was a valid search pursuant to a valid warrant supported by a magistrate's valid determination of probable cause.
6. That Officer Dilbeck's testimony was credible.
7. That the contrary testimony by Petitioner's witnesses as to the time of commencement of the search lacked specificity and was not credible.

Therefore, I conclude that any challenge by Smith's trial counsel to the validity and efficacy of the warrant or of the search pursuant to it would have been unavailing.  Counsel cannot be faulted for failing to pursue a meritless challenge.  I recommend to the District Court that these claims Nos. 2, 3, 4 and 21 be denied.

---

[7]     (ECF 37) (Defendant's Exhibits 1 through 6 and 12.

[8]     *Id*. (Government's Exhibits 1 through 3).

<u>Claims Nos. 5, 6, 23 and 24</u>

By these claims, Smith seeks to challenge the sufficiency of the affidavit supporting the issuance of the search warrant claiming that the warrant was wrongfully issued because either the confidential informant (CI) that provided information to Officer Dilbeck was lying or that in using that information in his affidavit averments Officer Dilbeck evidenced a reckless disregard of the truth.  So, argues Smith his counsel failed in his duty by not getting the court to identify the CI so he could be hailed into court for a cross-examination in a Franks hearing on the information he did or did not give to Officer Dilbeck that served as the probable cause basis for the issuance of the warrant.  The record in Smith's trial reflects that his counsel did file both a motion to disclose the CI and a motion for a Franks hearing.[9]  These motions were considered and denied by the court.[10] In denying the Franks hearing motion the court determined that Smith had failed to make a preliminary showing that Officer Dilbeck knowingly and intentionally, or with reckless disregard for the truth, included in his affidavit a false statement-specifically, a statement regarding whether the CI knew or recognized Smith or a statement that the CI was sold drugs at Smith's home.[11]  The denial of a Franks hearing and/or denial of disclosure of the identity of the CI were issues of trial court error that must be raised, if at all, on direct appeal.

Now trying to bring back this claim through the *Kimmelmann* backdoor by claiming failures by his counsel, Smith still fails to make any preliminary showing of the falsity of any statements by the CI or by Dillbeck. Further, the trial court found that the balance of the affidavit statements made by Dilbeck (apart from the CI's) were themselves sufficient to establish probable cause for the search. There is nothing before this court at this time showing or even implying that the CI or

---

[9]     ECF 20 and 21, respectively.

[10]     ECF 27

[11]     *Id*. at 8.

Dilbeck made false statements other than Smith's conclusory allegations. Smith's appellate counsel cannot be faulted for not having put forth meritless claims. This issue does not warrant further exploration in an evidentiary hearing. I recommend to the District Court that these claims Nos. 5, 6, 23 and 24 be denied.

<u>Claims Nos. 7, 11, 12, 13,14 and 15</u>

By his claims Nos. 7, 11, 12, 13, 14 and 15 Smith asserts that his trial counsel failed to present an effective defense to the jury because he failed to call witnesses (including himself) to establish that despite his own confession someone else possessed the drugs and guns at the residence, not him, and that his attorney denied him the opportunity to so testify. The record reflects that Smith's attorney informed the court in Smith's presence in court and without objection from Smith that Smith did not intend to testify on his own behalf.[12]

Immediately prior to the commencement of the evidentiary hearing discussed above with respect to claims nos. 2, 3, 4 and 21, Petitioner filed a motion seeking to expand the scope of the evidentiary hearing to consider "a mistaken identity defense" relating to Roderick Merchant being the true possessor of the drugs, drug paraphernalia and guns at the residence. Finding that the trial transcript referenced below reflected a full examination of the defendant's position regarding Roderick Marchand's identity and relationship *vel non* to the contraband discovered during the search, I overruled the motion prior to the commencement of the hearing.

The trial record as a whole reflects that a complete whole defensive case was presented and argued by his trial counsel on the defensive theory that while Smith was only a regular visitor to the house, a prior visitor, Roderick Merchant, was the one who brought in all the stash, the guns and drugs, and that Smith was not aware of the items and did not possess them, other than the stipulated gun. There was no fingerprint evidence to place the offending items in Smith's possession. And

---

[12]    CR 76, p. 219, lines 9-11.

counsel elicited  testimony from Smith's ex-wife, Shemeia Wyatt, mother of two of his children, who was at the house during the search, that placed the items in Roderick Merchant's possession, not Smith's.[13] Counsel further called Shrenna Hargrove,  Roderick Merchant's girl friend, as a witness to testify that the stash (the drugs, the scales and one of the guns)  was Merchant's, not Smith's.[14]  Smith's own theoretical testimony would have been that in making his confession that the stuff in the house was his he was just being chivalrous to take the heat off the ladies who were prior felons, one who had almost completed her probation.[15]  In this regard Smith's testimony would have been mere surplusage. Not calling Smith as a witness was clearly a part of his counsel's strategy to avoid subjecting Smith to cross-examination eliciting his prior extensive criminal history.

Smith provides no further information about what other witnesses should have been called or if called what their testimony would have been. Apart from his bold assertion this attorney refused his request to testify, Smith neither provides details of when or under what circumstances he made such a request nor gives details of when or how his attorney denied him the opportunity to testify. Conclusory statements without more are not sufficient. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).  Smith seems to simply rely upon his general assertions by his replies and his affidavit that if he had been called he would have testified that he admitted possession of the drugs and gun found on at the residence only to protect the interests of the three women present with him there.

Proving prejudice under *Strickland* is a heavy burden. Indeed, as far as the Fifth Circuit could determine in 2012,  no defendant in any court in the United States had been able to prove *Strickland*

---

[13]     CR 76, pp. 219-228.

[14]     CR 76, pp. 188-205.

[15]     The gist of his Affidavit, ECF 15.

prejudice on the basis of his counsel advising him not to testify in his own defense at trial.[16]  Smith

also fails to establish an exception to this record. I find that, even if Smith's counsel was deficient

in advising Smith not to testify at trial, his counsel's error could not be "so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

I recommend to the District Court that this Claim Nos. 7, 11, 12, 13,14 and 15 be denied.

Claims Nos. 8 and 25

By claims Nos. 8 and 25, Smith seeks to raise a "speedy trial" issue. I find that apart from

his bare allegations, there is no other factual support whatsoever for such claims against trial or

appellate counsel.  I recommend to the District Court that these Claims Nos. 8 and 25 be denied .

Claim No. 9

Smith's Claim No. 9 is incomprehensible in the light of the record.  As noted above, Smith's

trial counsel presented witnesses and other evidence supporting Smith's defensive theory that

someone other than he was the possessor of the drugs and other gun found at the house during the

search.  And his counsel did urge this defense strenuously before the jury in his closing argument.

The jury just simply did not believe Smith's witnesses in this regard.  A finding of guilt alone is not

evidence of ineffective assistance of counsel.  I recommend to the District Court that this Claim 9

be denied.

Claim No. 10

Smith's claim No. 10 that his counsel was remiss in failing "to effectively cross-examine the

government's witnesses is wholly conclusory and belied by the record.   The record reflects that

Smith's counsel did cross-examine each of the government's witnesses.  Smith wholly fails to

identify which witnesses he claims were not properly or sufficiently cross-examined or how or in

what manner or respect his counsel's cross-examination was unacceptable or deficient. A convicted

---

[16]      *See United States v. Wines*, 691 F.3d 599, 606 (5th Cir. 2012).

defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Strickland*, at 690; *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ").

### Claims Nos. 16, 17, 18, and 19

By these claims Nos. 16-19, Smith challenges his counsel's performance in the pretrial period with respect to his advice regarding plea negotiations versus trial.  First, he claims that his counsel did not advise him properly as to the "true risks" of a trial versus accepting a proposed plea. Yet, he does not allege the terms of any proposed plea agreement (if one was made) nor what his attorney did or did not advise him with respect thereto. Second, he claims his attorney did not inform him of the "true elements" of the offense.  Yet, he does not specify as to which of the three charged offenses his counsel misinformed him. Nor does he identify the element(s) of which his counsel misinformed him. Nor does he allege how or in what manner such mis-information or missing information affected his own trial-versus-plea making decision.  Third, he alleges his counsel gave him erroneous assurances regarding acquittal and appeal prospects, but does not allege what those assurances were or how or in what manner they affected his trial-versus-plea agreement decision making.  Finally, he complains that his counsel failed to negotiate for a plea agreement that included a specific sentence and/or dismissal  of count three (the charge of use of a firearm incident  to a drug trafficking offense.) But he wholly fails to allege what specific sentence he did or would have accepted or that the prosecution did or would have accepted. His allegations for these four claims are wholly conclusory lacking merit.  I recommend to the District Court that these Claims Nos. 16, 17, 18 and 19 be denied.

### Claim No. 20

By his claim No. 20 Smith alleges a double jeopardy violation by name, but wholly fails to allege how his sentence on Counts 2 and 3 of the indictment, for each of which the jury found him

14

guilty,  violates the double jeopardy clause of the United States Constitution. This is a bare, naked, frivolous, conclusory allegation not worthy of examination by this court.  I recommend to the District Court that this claim 20 be denied.

<u>Claim No. 22</u>

Smith's claim No. 22 is essentially an "insufficiency of the evidence" claim with respect to the third count of possession of a firearm in furtherance of a drug trafficking crime.  The Fifth Circuit in United States v. Robinson, 857 F.2d 1006, 1010 (1988) held that the presence of loaded firearms at the home of a defendant where drugs, money and ammunition were also found is sufficient to establish the use of a firearm as "an integral part" of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).   Moreover, the Court held that the Government is only obliged to show that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking; a showing that the weapon was used, handled or brandished in an affirmative manner is not required. *See United States v. Raborn*, 872 F.2d 589, 595 (5th Cir. 1989); United States v. Molinar-Apodaca, 889 F. 2d 1417 (5th Cir. 1989). The government may meet its burden by showing that the weapon involved could have been used to protect, facilitate, or have the potential of facilitating the operation, and the presence of the weapon was in some way connected with the drug trafficking. *United States v. Robinson*, 857 F.2d 1006, 1010 (5th Cir. 1988; *United States v. Blake*, 941 F.2d 334 (5th Cir. 1991) and an other twenty Fifth Circuit cases annotated in 125 ALR Fed. 545 (2014) section II(3) for the view that availability of firearm to facilitate offense constitutes use.

Sufficiency of the evidence claims may be brought on direct appeal. Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal. *See, e.g., United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Addonizio*, 442 U.S. 178, 184-185 (1979); *Hill v. United States*, 368 U.S. 424, 428-429 (1962)*; Sunal v. Large*, 332 U.S. 174, 181-182 (1947); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 274 (1942); *Glasgow v. Moyer*, 225 U.S. 420, 428 (1912); *In re Gregory*, 219 U.S. 210, 213

(1911).  Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Segler*, 37 F.3d 1131 (5th Circuit 1992 citing  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir.1992). Moreover, a defendant may not raise an issue constitutional or jurisdictional in nature for the first time on collateral review without showing both cause for his procedural default, and actual prejudice resulting from the error. *Id.* If the error is not of constitutional or jurisdictional magnitude, the defendant must show the error would result in a complete miscarriage of justice. *Id*.  The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice." *United States v. Addonizio*, supra, at 184.

I find that Smith could have raised his insufficiency of the evidence claim directly on his direct appeal but did not. I find no error, much less any constitutional or jurisdictional error, in the trial court proceedings. I find that in the light of the trial record the trial jury had before it sufficient evidence of Smith's guilt of possessing the firearms found in the residence and in the same proximity to the drugs found there that " a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  In the light of the evidence before the jury, the fact that Smith's trial and appellate counsel did not challenge the sufficiency of the evidence as to the third count was not an error or mistake on their part. There was no other error (obvious or otherwise) that substantially affected Smith's substantial rights or that seriously affected the fairness, integrity or public reputation of his trial. There is no miscarriage of justice implicated in this case.  I recommend that the District Court deny this claim.

<u>Recommendation</u>

Based upon the foregoing, I recommend that the District Court deny each and all of Petitioner's claims and that his motion be DENIED.

16

Standard Instruction to Litigants

A copy of this report containing findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

It is so ORDERED, this 19th day of November, 2015.

Robert K. Roach
UNITED STATES MAGISTRATE JUDGE